Cheshire, }
Oct. 4, 1910. }

## COOLEY *v.* EASTERN WIRE-BOUND BOX CO.

A master who knowingly provides defective machinery and fails to notify his servant of the danger attending its use is liable for the resulting injury, unless it conclusively appears that the servant appreciated, or should have appreciated, the risk incident to such conditions.

The casual and infrequent operation of a defective machine by an experienced servant is not sufficient to charge him, as matter of law, with an appreciation of the dangers incident to such use and not open to common observation.

Evidence that a circular saw threw stock back on the day after an injury to its operator is relevant upon the issue of its behavior on the day of the accident.

Misquotations of the evidence by counsel in argument do not furnish cause for reversal, if they are not found to have been intentionally made or to have produced the verdict, and the jury were instructed to disregard them.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the October term, 1909, of the superior court by *Wallace*, C. J., on the defendants' exceptions to the admission of evidence, to the remarks of counsel, and to the denial of a motion for the direction of a verdict in their favor.

*Cain & Benton* (*Mr. Benton* orally), for the plaintiff.

*Streeter, Hollis, Demond & Woodworth* (*Mr. Woodworth* orally), for the defendants.

YOUNG, J.   1. The plaintiff was injured while splitting a plank on a dead-bench splitting saw. One side of the saw-bench was higher than the other, and there was a lateral motion to the saw. The evidence tended to prove that these defects—the unevenness of the saw-bench and the lateral motion of the saw — might cause the saw to throw stock back against the operator. It can be found that the ordinary man is not accustomed to provide his servants with such a saw and saw-bench, that the defendants knew these defects might cause the saw to throw back stock without any warning, and that they failed to notify the plaintiff of that fact. It can be found, therefore, that the defendants were in fault unless it conclusively appears that the plaintiff either appreciated, or was in fault for not appreciating, the risk incident to these conditions.

Notwithstanding the plaintiff had operated splitting saws for more than twenty-five years at the time he was injured, this was the first saw with a lateral motion which he ever used and the first machine which did not have a carriage. He testified that he did not know the unevenness of the saw-bench or the lateral motion of the saw were liable to cause it to throw back stock without warning, and it is not common knowledge that such is the fact. The plaintiff had worked on this saw only a few times, from one to two hours at a time, before he was injured; and although he noticed the defects of which he complains, nothing occurred to call his attention to the danger peculiar to them. Consequently it cannot be said as a matter of law that he either appreciated or ought to have appreciated the risk incident thereto.

2. Since it can be found that the defendants were in fault, it cannot be said that the plaintiff assumed the risk of his injury.

3. The plaintiff was doing his work in the usual way at the time of the accident. Consequently the defendants' motion for a directed verdict was rightfully denied, if it can be found that the unevenness of the saw-bench or the lateral motion of the saw was the cause of the plaintiff's injury. The evidence tended to prove that a throw-back may be caused by any one of three things: the condition of the stock, the unevenness of the saw-bench, or the lateral motion of the saw. Usually, however, when the condition of the stock is the cause of the throw-back, the operator can tell when it is coming in time to avoid it. In this case the plaintiff had no warning of the throw-back. Consequently it can be found that it was caused by the defective condition of either the bench or the saw; in other words, that the condition of the saw or the saw-bench was the cause of the plaintiff's injury.

4. Girouard's statement that on the day after the accident the saw threw a plank back without giving him any warning was relevant to the issue of whether it threw back the one which injured the plaintiff in the same way.

5. If the plaintiff's counsel had persisted in misstating the evidence, it would have been the duty of the presiding justice to discipline him, and it might also be necessary to set aside the verdict in order to do justice. In this case, however, it is not found that the misstatements, if there were any, were intentionally made or that they produced the verdict. Consequently it cannot be said that the presiding justice did not do all that was necessary to insure a fair trial when he said to the jury: "In the course of the arguments there have been some exceptions to the remarks of counsel on the ground that there was no evidence to substantiate such arguments. That is, the one counsel or the other has said that the counsel addressed certain arguments to you which were not based on evidence,

and that there was no evidence to base them on. Gentlemen, in all such cases if there is any evidence to base those arguments upon you will give those arguments such weight as you think they are entitled to; but if, on the other hand, any argument that is addressed to you is not based on the evidence — that is, misstates the evidence, or has no evidence to sustain it — you will wholly disregard that argument."

*Defendants' exceptions overruled.*

All concurred.